**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Case No.:  21-CR-026 (CRC)**

UNITED STATES OF AMERICA,
        Plaintiff,
   v.                              Case No.  21-cr-026 (CRC)
CHRISTOPHER MICHAEL ALBERTS
        Defendant.
           _____/

<u>ALBERTS OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE
EXPERTS AND AFFIRMATIVE DEFENSES</u>

COMES NOW, Defendant, CHRISTOPHER    MICHAEL    ALBERTS,

(hereinafter, "Defendant" or "Alberts"), by and through undersigned counsel,

responds to and opposes the government's recent motion to exclude experts Steve

Hill and Dick Heller and to strike affirmative defenses.

     The United States seeks to rig trial in this case to preclude all evidence of

Alberts' innocence and any defense by defendant Alberts.  The government is even

seeking to prevent the jury from seeing the very things that Alberts saw during his

protest activities on Jan. 6, 2021.

     Defendant Alberts is a decorated U.S. Army Artillery gunman and wounded

combat veteran of the Iraq conflict.  Alberts is a certified combat medic with a

history of rescuing people in need and helping people in conflict zones. At the time

of Alberts' arrest on January 6, 2021 Alberts worked as a tow truck driver in

Maryland where his daily uniform included first aid equipment, a defensive

sidearm, and protective gear.  (Note that today Mr. Alberts is employed as a safety

flagman for construction projects throughout Maryland.)

On January 6, 2021, Mr. Alberts came to raise his voice in support of fair

elections, along with hundreds of thousands of others.  But Alberts' petitioning for

redress of grievances apparently fell on deaf ears, and Alberts was shot at with

less-lethal projectiles, bombed with flash-bang explosives, and arrested for having

a gun and resisting officers during a "civil disorder."

The evidence will show that Christopher Alberts was a first responder and

caregiver even on Jan. 6.  Despite witnessing lawless officers push a fellow

protestor off a 30-foot-high wall to his apparent death and seeing officers use other

excessive force against innocent protestors, Alberts came to the aid of officers and

protected officers from harm.  And even while in handcuffs, Alberts sought to alert

and summon aid for Officer Brian Sicknick, who had slumped and appeared to be

suffering a stroke.

The government, in its statement of facts, paints a description that is almost

laughably inaccurate:

> On January 6, 2021, a large crowd, including defendant Christopher
> Alberts, gathered on **restricted Capitol grounds** and forced its way
> to the exterior façade of the Capitol Building as a joint session of
> Congress convened to certify the vote count of the Electoral College

for the 2020 Presidential Election. ECF No. 1-1 at 1. Alberts wore a gas mask and body armor containing metal front and back plates, among other items. He carried a loaded firearm. As officers attempted to prevent the assembled rioters from advancing further onto restricted grounds and toward the Capitol Building, Alberts brandished a wooden pallet-type object and used it as a makeshift battering ram as he ascended the Northwest Steps at 1:54 p.m. He advanced toward the police line, making physical contact with the uniformed U.S. Capitol Police (USCP) officers, in an attempt to break through their position.2 See ECF No. 69 at 3. Some rioters eventually rushed past those officers and violently forced entry into the Capitol; others remained outside attacking officers and attempting to breach the building elsewhere. Id.

Alberts would agree that he has no defense if these stated facts were true.

But in fact, (1) the Grounds were not restricted, and binding case law requires them to be open for First-Amendment advocacy, (2) Alberts did not "force" his way to any location but helped and followed demonstrators seeking to have their voices heard, (3) Alberts' body armor contained no metal plates, and (4) Alberts never "brandished a wooden pallet-type object" or "used it as a makeshift battering ram." Rubber bullets and other projectiles were flying and striking Alberts and fellow petitioners in the face and elsewhere—which is excessive force by every definition.  Even if Alberts' movements made contact with officers on Jan. 6, such contact was incidental and evidenced no intention to harm or cause bodily injury.

The government seeks to deprive Alberts of a fair trial by carefully editing imagery in violation of Rule 106 of the Federal Rules of Evidence ('**the rule of completeness**').[1]

The government repeatedly references the government's March 2 motion in limine, ECF 106, which is hardly as comprehensive as the government suggests. The government's motion in limine merely sought to preclude "Christopher Alberts from presenting arguments or evidence during the trial of this action that are misleading, unduly prejudicial, or irrelevant in determining Alberts's guilt of the nine offenses charged in the Second Superseding Indictment. . ."

Unfortunately for the government, binding Supreme Court case law allows a defendant to show evidence of police and investigative bad faith and misconduct. *Kyles v. Whitley* 514 U.S. 419 (1995).

The government can't have it both ways.  On one hand, the government seeks to preclude "actions of non-testifying individuals whose conduct was not directly observed by Defendant and who were not in close proximity to him on January 6, 2021."  But on the other hand, the government seeks to introduce carefully edited video clips which would mislead the jury by deleting scenes which

---

[1] **Rule 106. Remainder of or Related Writings or Recorded Statements**
If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

had profound impacts on Alberts, including a horrifying scene where barbaric and lawless officers appeared to shove a First-Amendment demonstrator off of a 30-foot wall to the demonstrator's apparent death.

Alberts is charged with resisting officers during a civil disorder, and therefore Alberts has a right to show he assisted officers during the alleged civil disorder. Alberts also has a right to show the "civil disorder" was 99% composed of peaceful protestors, with a tiny faction of agitators and overzealous officers who escalated tensions among the protestors. Alberts has a right to show that officers requested and relied on Alberts, and that Alberts *protected* officers rather than resisting them. Alberts has a right to show the video evidence of Alberts calming members of the crowd and protecting officers from the crowd, which was angered at the sight of a dying protestor (Ben Phillips) left to die without ambulance attention. (Alberts is heard on plainly exculpatory video recordings saying he was helping keep an avenue open through the crowd for a potential ambulance.)

The very video recordings the government will use to try to convict Alberts of "assault" also show (in the government's words) cops "unjustifiably push[ing] a rioter from the outside railing of the Northwest Steps."

Mr. Alberts was one of the last protestors to encounter officer Brian Sicknick before Sicknick's death; and Alberts verbally offered to render aid to the slouching

Sicknick (even while Alberts was himself in handcuffs.)  This evidence is not only exculpatory; it is needed for accuracy so that the jury will understand events as they really happened.

Significantly, the government's motion in limine was a boilerplated copy of such motions filed by the government in every Jan. 6 case:

> The Government concedes the possibility that the conduct of law enforcement officers contemporaneously observed by Alberts is relevant to the Defendant's state of mind on January 6, 2021, and may evidence his mens rea. However, the Defendant should be barred from introducing evidence or arguing in a manner suggesting that any alleged action or inaction on the part of the police made his conduct legal by estoppel. That is, like the Chief Executive, a Metropolitan Police
>
> Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her conduct. See Chrestman, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by himself engaging in misconduct or neglecting to enforce the law. Alberts also should be prohibited from introducing officers' alleged actions or inaction that he did not observe, since that conduct cannot be relevant to his state of mind on January 6, 2021.

The government, in its motion in limine, argued that self defense was not available to Alberts under the government's stated facts.   But the government *concedes* that self defense would be available under facts *that actually happened*.

The United States contends that Alberts was an "aggressor."  But in Alberts case, the evidence will show that the "wooden pallet" was placed in front of

Alberts and that Alberts had to pick up the pallet to get it out of his way. It was at that moment that Alberts was assaulted with multiple munitions. Unfortunately, Capitol Police did not wear bodycams on Jan. 6; so imagery of these moments is sparse. However, the evidence that does exist substantiates Alberts' self-defense and defense-of-others claims.

**Alberts had a right to be on the Capitol Grounds for First Amendment advocacy.**

Alberts *would be precluded* from arguing justified use of force under facts as described by the government. But those are not the facts. The Capitol grounds were <u>not</u> an unauthorized area on Jan. 6, 2021, and Alberts and fellow protestors had every right to be there. *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972). In *Jeannette Rankin Brigade* a special 3-judge panel of the DC District Court held that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making *Jeannette Rankin Brigade* binding precedent. 409 U.S. 972 (1972).

Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), the DC Circuit held that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner restriction" a regulation limiting the length of time during which

demonstration "props and equipment" may remain on the Grounds). Clearly,

therefore, the "Grounds (excluding such places as the Senate and House floors,

committee rooms, etc.) have traditionally been open to the public," and "the

primary purpose for which the Capitol was designed—legislating"—is entirely

consistent "with the existence of all parades, assemblages, or processions which

may take place on the grounds." *Jeannette Rankin Brigade*, 342 F. Supp. at 584.

Indeed, in *Jeannette Rankin Brigade*, the district court observed that "the

fundamental function of a legislature in a democratic society assumes accessibility

to [public] opinion." *Id*.

Although a great deal has changed in the 50 years since *Jeannette Rankin Brigade,* these precedents have never been overturned. The evidence will show that on Jan. 6, 2021, Alberts was lawfully proceeding up a stairway during a protest when he witnessed officers shoving a fellow protestor to his apparent death[2] some 8 to 10 feet in front of Alberts. Alberts also witnessed an officer gesturing with his hand threatening deadly force.

RESPECTFULLY SUBMITTED,

*/s/ John M. Pierce*

John M. Pierce

21550 Oxnard Street, 3rd Floor OMB #172

Woodland Hills, CA 91367

(213) 279-7648

jpierce@johnpiercelaw.com

---

[2] The victim, Derrick Varga, survived but had serious injuries and will have lifelong complications.  Alberts could not see Varga's landing on the ground thirty feet below.

CERTIFICATE OF SERVICE

I hereby certify that on 4/11/2023 I uploaded this document to the Court's electronic filing system, serving it on all parties.

------/s/ John Pierce